FILED
IN CLERKS OFFICE
U.S. ___ COURT ED N.Y:
★ MAY 25 2005 ★
P.M. _____
TIME A.M. _____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X

GLENN S. UDELL,

        Plaintiff,

        -against-

BERKSHIRE LIFE INSURANCE COMPANY
OF AMERICA,

        Defendant .
----------------------------------X

**OPINION & ORDER**
**CV-03-2721(SJF)(KAM)**

FEUERSTEIN, J.

On June 2, 2003, Glenn S. Udell (plaintiff) commenced this diversity action against defendant Berkshire Life Insurance Company of America (Berkshire). On February 25, 2004, plaintiff filed an amended complaint against Berkshire alleging claims, *inter alia*, for breach of contract and breach of an implied covenant of good faith and fair dealing. Berkshire now moves pursuant to Rules 12(b)(6) and 12(h)(3) of the Federal Rules of Civil Procedure for dismissal of certain of plaintiff's claims. For the reasons stated herein, Berkshire's motion is granted in part and denied in part.

I.    BACKGROUND

    A.    Factual Background[1]

Plaintiff owns a beneficial interest in AFGO Mechanical, Inc. (AFGO). (Amended

---

[1] As is required on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and 12(h)(3), the factual allegations in the complaint are accepted to be true for purposes of this motion, and all reasonable inferences are drawn therefrom in favor of plaintiff. They do not constitute findings of fact by this court.

1

Complaint [Compl.], ¶ 34). The only other owner of a beneficial interest in AFGO is plaintiff's brother Blaine Udell (Blaine). (Id. at ¶¶ 35-33 [sic]). Plaintiff alleges that he wanted to acquire disability income (DI) insurance "to secure income in the event an accident or his health interfered with his ability to work." (Id. at ¶ 23). In addition, plaintiff alleges that he and Blaine wanted to acquire disability buy-out (DB) insurance "to fund the disability buy out provision of their shareholders' agreement" with respect to AFGO. (Id. at ¶¶ 34[2]).

Plaintiff alleges that on June 1, 2000, he applied for DI and DB insurance policies through an insurance agent who represented himself as a duly licensed agent of Berkshire. (Compl., ¶¶ 19-20, 35-36). On July 14, 2000, Berkshire issued to plaintiff DI insurance policy, number H0370542, and DB insurance policy, number H0370543 (the policies). (Id. at ¶¶ 29, 40). According to plaintiff, Berkshire accepted premium payments for each of the policies. (Id. at ¶ 51).

Plaintiff alleges that he became disabled within the meaning of the policies and timely notified Berkshire of his claims for coverage under the policies. (Compl., ¶¶ 45-46, 48, 64-65). According to plaintiff, Berkshire refused to pay him any of the disability benefits under the policies and instead tendered the return of the premiums paid by him for the policies. (Id. at ¶¶ 50, 53).

---

[2] Plaintiff's amended complaint is misnumbered after paragraph 35. This citation is to the second paragraph 34.

B.  Procedural History

On June 2, 2003, plaintiff commenced this diversity action against Berkshire[3]. On February 25, 2004, plaintiff filed an amended complaint against Berkshire alleging claims, *inter alia*, for breach of contract and breach of an implied covenant of good faith and fair dealing. Plaintiff seeks (1) a declaration that the policies were valid and enforceable contracts and that Berkshire must reinstate the policies without any lapse in coverage; (2) a declaration that he is qualified for, and entitled to, disability benefits under the policies and that Berkshire breached the contracts; (3) compensatory damages; and (4) consequential and punitive damages.

Berkshire now moves (1) pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure to dismiss plaintiff's claims under the DB insurance policy on the basis that plaintiff lacks standing to assert any claims under that policy and, thus, this Court lacks subject matter jurisdiction over those claims; (2) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss plaintiff's claims under the DB insurance policy on the basis that plaintiff fails to allege that conditions precedent to coverage have been satisfied as required by Rule 9(c) of the Federal Rules of Civil Procedure; and (3) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss plaintiff's claims for consequential and punitive damages for failure to state a cause of action.

---

[3] According to plaintiff, he is a citizen of New York State and Berkshire is a Massachusetts corporation which does not have its principal place of business in New York.

II. DISCUSSION

   A. Dismissal Pursuant to Rule 12(h)(3)[4]

      1. Standard of Review

Rule 12(h)(3) of the Federal Rules of Civil Procedure provides that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Motions brought pursuant to Rule 12(h)(3) are subject to the same standards as motions to dismiss for lack of subject matter jurisdiction brought pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. See, Brotman v. U.S., 111 F.Supp.2d 418, 420, n. 1 (S.D.N.Y. 2000); Garcia v. Pizzolato, 99-Civ-0898, 2000 WL 328818, at * 2 (S.D.N.Y. Mar. 28, 2000).

"In determining whether the federal courts have subject matter jurisdiction over a cause of action, a district court must look to the way the complaint is drawn to see if it claims a right to recover under the laws of the United States." IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1055 (2d Cir.1993), cert. denied, 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994) (quoting Goldman v. Gallant Sec., Inc., 878 F.2d 71, 73 [2d Cir.1989]). When subject matter jurisdiction is challenged, courts must accept the material factual allegations contained in the complaint and may consider materials extrinsic to the complaint. Moser v. Pollin, 294 F.3d 335, 339 (2d Cir. 2002); Correspondent Services Corp. v. JVW Investment, Ltd., No. 99 Civ. 8934, 2004 WL 2181087, at * 6 (S.D.N.Y. Sept. 29, 2004).

---

[4] The branch of Berkshire's motion which seeks dismissal for lack of subject matter jurisdiction is brought pursuant to Rule 12(h)(3), rather than Rule 12(b)(1) of the Federal Rules of Civil Procedure, because Berkshire has already answered the complaint. See, e.g. Brotman v. U.S., 111 F.Supp.2d 418, 420, n. 1 (S.D.N.Y. 2000).

## 2. Standing

Berkshire contends, *inter alia*, that AFGO is the owner of the DB policy, plaintiff is merely an insured under the policy, and, thus, plaintiff does not have standing with respect to the DB insurance policy. Moreover, Berkshire maintains that the purpose of the DB insurance policy is "to defray the expense associated with redeeming a shareholder's stock" (Berkshire's Memorandum of Law [Def. Mem.], p. 5 [citation omitted]), and, thus, only AFCO would directly benefit from the relief sought in the complaint regarding the DB insurance policy.

"[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshhold [sic] requirement imposed by Article III of the Constitution by alleging an actual case or controversy." City of Los Angeles v. Lyons, 461 U.S. 95, 101, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). To establish constitutional standing, the following three requirements must be met: (1) the plaintiff must allege an "injury in fact;" (2) there must be "a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant;" and (3) there must be "a likelihood that the requested relief will redress the alleged injury." Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 102-103, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); see also Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)(holding that in order to establish constitutional standing, a plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief). The burden is on the party invoking federal jurisdiction to establish its existence. Steel Co., 523 U.S. at 103-104, 118 S.Ct. 1003; Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

An "injury in fact" has been defined as "an invasion of a legally protected interest which

is * * * concrete and particularized * * * and * * * actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560, 112 S.Ct. 2130 (internal quotations and citations omitted). In other words, a party must demonstrate a "distinct and palpable injury to himself" and cannot base his or her claims on the legal rights of third parties. Warth v. Seldin, 422 U.S. 490, 499-501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice * * *." Lujan, 504 U.S. at 561, 112 S.Ct. 2130.

The DB insurance policy[5] provides, in pertinent part, that "[a]ll of the indemnities of this policy will be payable to the policyowner * * *." (Affirmation of Norman L. Tolle [Tolle Aff.], Ex. B, p. 7). The policy defines "policyowner" as "the business, partner or co-owner identified as owner in the application." (Id., at p. 5). Plaintiff's application for the DB insurance policy identifies "AFCO, Inc." as the "Owner & Loss Payee" of the policy[6]. (Tolle Aff., Ex. B. Application, p. 3, ¶ 22c). It is not disputed that plaintiff is an insured under the policy. (Tolle Aff., Ex. B).

Contrary to the contention of Berkshire, it cannot be determined at the pleading stage that the DB policy was intended merely to enable AFCO "to defray the expense associated with redeeming a shareholder's stock." The case B-T Dissolution, Inc. v. Provident Life & Accident

---

[5] Since plaintiff admittedly had knowledge of the provisions of the insurance policies and relied on such policies in bringing suit, the insurance policies, though not formerly attached to the complaint or incorporated by reference therein, are properly considered on this motion to dismiss. See, e.g. Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993); Spencer Trask Software and Information Servs. LLC v. RPost Intl. Ltd., No. 02 Civ. 1276, 2003 WL 169801, at * 4 (S.D.N.Y. Jan. 24, 2003).

[6] The application is attached to the policy and is considered part of the contract between defendant and the policyowner. (See, Tolle Aff., Ex. B).

Ins. Co., 101 F.Supp.2d 930, 934-935 (S.D. Ohio 2000), to which Berkshire cites, is distinguishable. B-T Dissolution was determined on a motion for summary judgment and there was evidence, *inter alia*, not only that the business was identified as both the loss payee and policy owner and that the policy promised the payment of benefits to the business if the business became obligated to make payments to the insured under the terms of his buy-sell agreement with the business, but also that the policy was intended to be "key man" insurance, designed to help with the stock repurchase if the stock had to be redeemed by the corporation, and that any benefits paid to the business under the policy would not be "passed through" to the exiting shareholder. In this case, other than Berkshire's conclusory allegation, there is no evidence from which it can be determined whether the benefits to be paid to AFCO under the DB insurance policy would be "passed through" to plaintiff. Accordingly, plaintiff, as an insured under the DB policy, arguably has a personal stake in the outcome of this litigation sufficient to confer constitutional standing upon him at least at the pleadings stage.

Berkshire has not identified any case directly on point in support of its contention that plaintiff does not have standing as an insured under the DB policy to assert a claim under that policy. In the case, Lubrano v. Berkshire Life Ins. Co., No. 94 CV 5651, 1995 WL 313144 (E.D.N.Y. May 17, 1995), although the issue of standing was not specifically addressed, the insured under a disability buy-out policy similar to the one in the instant action was permitted to maintain an action against the insurer to recover the proceeds of that policy both as an assignee of the loss payee, which was the company that he co-owned, and on his own behalf. Similarly, in the case Goldstein v. Lincoln Natl. Life Ins. Co., 970 F.Supp. 598 (E.D. Mich. 1997), although the issue of standing again was not specifically addressed, the personal representative of the

deceased insured's estate was permitted to maintain an action for breach of contract and to recover benefits under a disability buy-out insurance policy naming the insured's business as policy owner.

The case to which Berkshire does cite in purported support of its position, In re Bennett Funding Group, Inc. Securities Litigation, 270 B.R. 126 (S.D.N.Y. 2001), is inapposite. The issue in that case was whether any of the investors of the debtors were loss payees or beneficiaries under a reinsurance policy and, thus, had standing to pursue a contract action for policy proceeds. Unlike the present case, none of the investors were named insureds on the reinsurance policy and, thus, their claims were based entirely on their alleged status as third-party beneficiaries under the reinsurance policy. Moreover, even if the investors were original named insureds, they could not maintain a direct action against the reinsurer absent an express provision to the contrary in the reinsurance contract, because an original insured is neither a party to the reinsurance contract nor in privity therewith. See, Travelers Indem. Co. v. Scor Reinsurance Co., 62 F.3d 74, 76 (2d Cir. 1995); Unigard Sec. Ins. Co., Inc. v. N. River Ins. Co., 4 F.3d 1049, 1054 (2d Cir. 1993). Accordingly, the branch of Berkshire's motion which seeks dismissal of the complaint pursuant to Rule 12(h)(3) for lack of subject matter jurisdiction is denied.

B. Dismissal Pursuant to Rule 12(b)(6)

1. Standard of Review

A motion to dismiss for failure to state a claim under Rule 12(b)(6) should be granted only where "it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Levitt v. Bear Stearns & Co., 340 F.3d 94, 101 (2d Cir.

2003)(internal quotations and citations omitted). In deciding a motion to dismiss, the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. See, Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 44 (2d Cir. 2003); New v. Ashcroft, 293 F.Supp.2d 256, 257 (E.D.N.Y. 2003). The court's task "is merely to assess the legal feasability of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Levitt, 340 F.3d at 101 (internal quotations and citations omitted). The issue is not whether a plaintiff will ultimately prevail but whether he or she is entitled to offer evidence to support the claims. See, New, 293 F.Supp.2d at 257 (citing Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 [2d Cir. 1995]). The Court must limit itself to the facts alleged in the complaint, to any documents attached to the complaint as exhibits or incorporated by reference therein, to matters of which judicial notice may be taken, or to documents within plaintiff's possession or of which plaintiffs had knowledge and relied on in bringing suit. See, Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993); Spencer Trask Software and Information Servs. LLC v. RPost Intl. Ltd., No. 02 Civ. 1276, 2003 WL 169801, at * 4 (S.D.N.Y. Jan. 24, 2003).

2. Breach of Contract Claim Regarding DB Insurance Policy

Berkshire contends, *inter alia*, that since plaintiff does not allege the existence of a buy-sell agreement or that AFGO was making payments to him to purchase his ownership interest in the business, which are required before any indemnities are paid under the DB policy, plaintiff's claims relating to the DB insurance policy should be dismissed.

To state a claim for breach of contract under New York law, the complaint must allege

9

(1) the existence of a contract; (2) that the plaintiff has performed his or her obligations under the contract; (3) that the defendant failed to perform his or her obligations thereunder; and (4) damages resulting to the plaintiff from the defendant's nonperformance. See, W.B. David & Co., Inc. v. DWA Communications, Inc., No. 02 Civ. 8479, 2004 WL 369147, at * 2 (S.D.N.Y. Feb. 26, 2004); Global Intellicom, Inc. v. Thomson Kernaghan & Co., No. 99 CIV 342, 1999 WL 544708, at * 18 (S.D.N.Y. Jul. 27, 1999). Rule 9(c) of the Federal Rules of Civil Procedure provides as follows:

> "In pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred. A denial of performance or occurrence shall be made specifically and with particularity."

The DB insurance policy provides, in pertinent part, as follows:

> If the insured becomes totally disabled while this policy is in force and remains totally disabled throughout the waiting period, [Berkshire] will pay any lump sum benefit due * * * provided:
>
> * * *
>
> (b) [the policyowner is] obligated to purchase the *insured's ownership interest in the business* if the insured becomes totally disabled. (Emphasis in original). A written buy-sell agreement must be executed and in place before a disability occurs which would qualify for benefits under this policy. If no agreement is in place at the time of disability, [Berkshire's] liability will be limited to a refund of premium. [Berkshire] require[s] a written assurance within one year of the policy date than an agreement is in place. If no assurance is received, the policy will be voided and the premiums refunded; and
>
> (c) [the policyowner is] making payments to purchase the *insured's ownership interest in the business.* (Emphasis in original).
>
> * * *

10

(Tolle Aff., Ex. B, pp. 5-6).

Initially, contrary to Berkshire's contention, the application for the DB insurance policy indicates that a buy-sell agreement was in place as of the date of the application. (Tolle Aff., Application, p. 3, ¶ 22e). This allegation is sufficient, at least at the pleadings stage, to withstand dismissal based upon a failure to satisfy a condition precedent.

However, although a general averment of performance of a condition precedent is sufficient to withstand a motion to dismiss, see, e.g. Ackerley Media Group, Inc. v. Sharp Electronics Corp., 170 F.Supp.2d 445, 453 (S.D.N.Y. 2001), plaintiff does not even generally allege performance of his or AFCO's remaining obligations under the DB insurance policy. Accordingly, plaintiff's breach of contract claim relating to the DB insurance policy is dismissed for failure to state a claim. See, e.g. Global Intellicom, 1999 WL 544708, at * 18 (dismissing plaintiff's breach of contract claim for plaintiff's failure to allege its own performance under the contract or an excuse for its failure to perform); Lubrano, 1995 WL 313144, at * 4 (granting summary judgment dismissing the complaint for plaintiff's failure to establish that he satisfied a condition precedent to the applicability of the buy-out disability policy); see also Morinelli v. Provident Life & Accident Ins. Co., 242 Mich.App. 255, 671 N.W.2d 777, 785 (Mich.App. 2000)(affirming summary disposition of business's claim under the buy-out expense disability policy for the business's failure to meet a condition precedent of the insurance policy, to wit, to have a buy-sell agreement in effect at the time the policy was enacted or the disabled employee filed his claim for disability).

### 3. Consequential and Punitive Damages Claims

Berkshire contends that since New York law does not recognize a claim for breach of an implied covenant of good faith as separate from a breach of contract claim, plaintiff is limited solely to contractual damages and cannot recover consequential or punitive damages. In addition, Berkshire contends that consequential damages are not recoverable because they were not within the contemplation of the parties at the time of, or prior to, contracting. Moreover, defendant contends that plaintiff's claim for punitive damages based on defendant's purported "wanton, wicked and/or malicious conduct" should also be dismissed, particularly since plaintiff fails to allege a tort cause of action.

"Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely breach of the underlying contract." Harris v. Provident Life and Acc. Ins. Co., 310 F.3d 73, 80 (2d Cir. 2002)(citation omitted). "New York law * * * does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." Id., at 81.

#### a. Consequential Damages

Under New York law, a plaintiff can only recover consequential damages in insurance cases if the specific type of injury alleged was contemplated by the parties at the time of contracting. See, Globecon Group, LLC v. Hartford Fire Ins. Co., No. 03 Civ. 0023, 2003 WL 22144316, at * 3 (S.D.N.Y. Sept. 17, 2003); Montefiore Med. Ctr. v. American Protection Ins. Co., No. 00 Civ. 3235, 2003 WL 21108261, at * 1 (S.D.N.Y. May 14, 2003). In order to

12

demonstrate such an understanding on the part of the parties to the contract, there must be a specific contractual provision permitting recovery for consequential damages. See, Globecon, 2003 WL 22144316, at * 3. Since the insurance policies at issue in this case include no statement anticipating the recovery of consequential damages flowing from an alleged breach of the contracts by defendant, and, indeed, plaintiff does not even allege that the parties contemplated, at the time they entered into the insurance contracts, the availability of consequential damages for a wrongful refusal to pay, plaintiff's claims for consequential damages are dismissed. See, e.g. Globecon, 2003 WL 22144316, at * 3-4 (dismissing plaintiff's claim for consequential damages since the insurance policy at issue did not include a statement anticipating recovery of damages flowing from an alleged breach of the contract by the insurer); Montefiore Med. Ctr., 2003 WL 21108261, at * 2 (denying plaintiff's motion to amend its complaint to add a claim for consequential damages because the proposed amendment failed to plead that the parties contemplated, at the time they entered into the contract, the availability of consequential damages for wrongful refusal to pay).

b. Punitive Damages

Under New York law, a plaintiff may not recover punitive damages for an ordinary breach of contract claim because the purpose of punitive damages is to vindicate public rights, not to remedy private wrongs. A.J. Sheepskin Leather & Outwear, Inc. v. USF Ins. Co., No. 03 Civ. 2382, 2004 WL 503727, at * 2 (S.D.N.Y. Mar. 12, 2004); see also Rocanova v. Equitable Life Assur. Soc. of U.S., 83 N.Y.2d 603, 613, 612 N.Y.S.2d 339, 634 N.E.2d 940 (1994). "[W]here the breach of contract also involves a fraud evincing a high degree of moral turpitude

13

and demonstrating such wanton dishonesty as to imply a criminal indifference to civil obligations, punitive damages are recoverable if the conduct was aimed at the public generally." Rocanova, 83 N.Y.2d at 613, 612 N.Y.S.2d 339 (internal quotations and citation omitted). Thus, in order to recover punitive damages, the plaintiff "must not only demonstrate egregious tortious conduct by which he or she was aggrieved, but also that such conduct was part of a pattern of similar conduct directed at the public generally." Id.; see also New York Univ. v. Continental Ins. Co., 87 N.Y.2d 308, 316, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995)(holding that in order to state a claim for punitive damages when the claim arises from a breach of contract, the plaintiff must allege (1) that defendant's conduct is actionable as an independent tort; (2) that the tortious conduct is egregious; (3) that the egregious conduct was directed at plaintiff; and (4) that the conduct was part of a pattern directed at the public generally). "Where a lawsuit has its genesis in the contractual relationship between the parties, the threshold task for a court considering defendant's motion to dismiss a cause of action for punitive damages is to identify a tort independent of the contract." New York Univ., 87 N.Y.2d at 316, 639 N.Y.S.2d 283.

Plaintiff's claims alleging that defendant violated an implied covenant of good faith and fair dealing merely mirror his allegations that defendant breached the insurance contracts and allege no conduct other than defendant's failure to pay plaintiff's claims under the policies. Accordingly, plaintiff does not allege a tort independent of the insurance contracts[7]. See, e.g.

---

[7] The First Department's holding in Acquista v. New York Life Ins. Co., 285 A.D.2d 73, 730 N.Y.S.2d 272 (1st Dept. 2001), which held that a plaintiff can recover extracontractual damages for an insurer's bad faith breach of a disability insurance contract, is contrary to prevailing New York Court of Appeals case law and is not controlling. See, e.g. Manning v. Utilities Mut. Ins. Co., No. 98 Civ. 4790, 2004 WL 235256, at * 4, n. 3 (S.D.N.Y. Feb. 9, 2004); Globecon Group LLC v. Hartford Fire Ins. Co., No. 03 Civ. 0023, 2003 WL 22144316, at * 4 (S.D.N.Y. Sept. 17, 2003); Brown v. Paul Revere Life Ins. Co., No. 00 Civ. 9110, 2001 WL

14

New York Univ., 87 N.Y.2d at 316, 639 N.Y.S.2d 283 (holding that where a party is merely seeking to enforce its bargain, a tort claim will not lie); see also Brown v. Paul Revere Life Ins. Co., No. 00 Civ. 9110, 2001 WL 1230528, at * 5 (S.D.N.Y. Oct. 16, 2001)(denying plaintiff's motion to amend his complaint to assert a claim for defendant's bad faith refusal to pay benefits under a disability insurance policy since plaintiff failed to allege a tort independent of the insurance contract).

Moreover, although plaintiff conclusorily alleges that defendant's conduct was "wanton, wicked and malicious," (Compl., ¶¶ 65, 78), he fails to allege that such conduct was part of a pattern of similar misconduct directed at the public in general. Accordingly, plaintiff's claims for punitive damages are dismissed. See, e.g. A.J. Sheepskin, 2004 WL 503727, at * 3-4 (dismissing plaintiff's claim for breach of the implied covenant of good faith and fair dealing seeking punitive damages, *inter alia*, since that claim merely mirrored plaintiff's breach of contract claim and failed to allege any conduct by the defendant other than its failure to pay insurance claims, that plaintiff was personally the victim of a cognizable tort arising out of its contractual relationship with the defendant, or that the defendant's conduct was not only wanton, but also that it was part of a pattern of similar, publicly-directed misconduct).

III. CONCLUSION

The branches of defendant's motion which seek dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure of plaintiff's breach of contract claim relating to the DB

---

1230528, at * 5 (S.D.N.Y. Oct. 16, 2001).

insurance policy and claims for consequential and punitive damages for failure to state a claim are granted, and those claims are dismissed; and the motion is otherwise denied.

SO ORDERED.

_____
SANDRA J. FEUERSTEIN
United States District Judge

Dated: May 18, 2005
       Central Islip, New York

Copies to:

Dinerstein & Lesser, P.C.
2171 Jericho Turnpike, Suite 150
Commack, New York 11725

Rivkin Radler LLP
EAB Plaza
Uniondale, New York 11556-0111